Consolidated Plaintiffs' and *Jenkins* Plaintiffs' Joint
Reply in Support of Class Certification

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

**REDACTED**

Steve W. Berman (*pro hac vice*)
Ashley Bede (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*ashleyb@hbsslaw.com*

Bruce L. Simon (96241)
Aaron M. Sheanin (214472)
Benjamin E. Shiftan (265767)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
*bsimon@pswlaw.com*
*asheanin@pswlaw.com*
*bshiftan@pswlaw.com*

Counsel for *Consolidated Plaintiffs*
*Interim Co-Lead Class Counsel*

[Additional counsel listed on signature page]

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
*jkessler@winston.com*
*dfeher@winston.com*
*dgreenspan@winston.com*

Derek J. Sarafa (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
*dsarafa@winston.com*

Sean D. Meenan (SBN 260466)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
*smeenan@winston.com*

Counsel for *Jenkins Plaintiffs*
*Interim Class Counsel*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ATHLETIC GRANT-IN-AID CAP ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 4:14-md-02541-CW<br>Case No. 4:14-cv-02758-CW<br><br>CONSOLIDATED PLAINTIFFS' AND *JENKINS* PLAINTIFFS' JOINT REPLY IN SUPPORT OF CLASS CERTIFICATION<br><br>Date:    July 23 or October 1, 2015<br>Time:    2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Before:   Hon. Claudia Wilken |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ................................................................................................. 3

I.    *O'BANNON* COMPELS CLASS CERTIFICATION. ................................ 3

II.   DEFENDANTS' PROFFERED CLASS CONFLICTS ARE PREMISED UPON INJUNCTIVE RELIEF THAT PLAINTIFFS DO NOT SEEK, AND HYPOTHETICAL CONFLICTS THAT CANNOT DEFEAT CLASS CERTIFICATION. ..................................................................... 4

III.  DEFENDANTS' ARGUMENTS REGARDING CLASS CONFLICTS BASED ON PURPORTED "SUBSTITUTION EFFECTS" HAVE NEVER BEEN RECOGNIZED AS A BASIS FOR DENYING INJUNCTIVE CLASS CERTIFICATION. ..................................................................... 7

IV.  DEFENDANTS' ECONOMIC ASSUMPTIONS ARE PURE FICTION. .......................... 11

V.   NAMED PLAINTIFFS EACH HAVE STANDING TO PURSUE AN INJUNCTION ON A CLASS-WIDE BASIS. ..................................................... 13

CONCLUSION ............................................................................................ 15

**Cases**

*Am. Council of the Blind v. Astrue*,
  No. C 05-04696 WHA, 2008 WL 4279674 (N.D. Cal. Sept. 11, 2008)............................5

*Brown v. Pro Football, Inc.*,
  518 U.S. 231 (1996)................................................................................8

*Cason-Merenda v. VHS of Mich., Inc.*,
  No. 06-15601, 2014 WL 905828 (E.D. Mich. Mar. 7, 2014)........................................9

*Cnty. of Riverside v. McLaughlin*,
  500 U.S. 44 (1991)................................................................................14

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)............................................................................5

*Cooper v. IBM Pers. Pension Plan*,
  No. 99-829-GPM, 2001 WL 36412295 (S.D. Ill. Sept. 17, 2001) *order corrected*,
  No. 99-CV-829, 2001 WL 1772736 (S.D. Ill. Oct. 3, 2001).......................................10

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011). ...................................................................15

*Funeral Consumers Alliance, Inc. v. Service Corp. International*,
  695 F.3d 330 (5th Cir. 2012) ....................................................................15

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)...............................................................................12

*Genesis Healthcare Corp. v. Symczyk*,
  133 S.Ct. 1523 (2013).............................................................................14

*Gibson v. Local 40*,
  543 F.2d 1259 (9th Cir. 1976) ...................................................................15

*Haro v. Sebelius*,
  747 F.3d 1099 (9th Cir. 2014) ...................................................................14

*In re High-Tech Emp. Antitrust Litig.*,
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ...........................................................9

*In re K–Dur Antitrust Litig.*,
  686 F.3d 197 (3d Cir. 2012)......................................................................10

*In re NCAA I-A Walk-On Football Players Litig.*,
  No. C04-1254C, 2006 WL 1207915 (W.D. Wash. May 3, 2006) .......................................4

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   No. C 09-1967 CW, 2013 WL 5979327 (N.D.Cal. Nov. 8, 2013) ...................................1, 3, 4, 13

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995)...................................................................................10

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
   305 F.R.D. 164 (N.D. Cal. 2015)...................................................................................5, 8

*Kremens v. Bartley*,
   431 U.S. 119 (1977)......................................................................................................15

*Kuenz v. Goodyear Tire & Rubber Co.*,
   104 F.R.D. 474 (E.D. Mo. 1985)..................................................................................10

*Lanner v. Wimmer*,
   662 F.2d 1349 (10th Cir. 1981) ....................................................................................10

*Laumann v. Nat'l Hockey League*,
   Nos. 12-CV-1817 (SAS), 12-CV-3704 (SAS), 2015 WL 2330107 (S.D.N.Y. May
   14, 2015)...................................................................................................................1, 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................14

*Meijer, Inc. v. Abbott Labs.*,
   No. C 07-5985 CW, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ...............................7

*Meiresonne v. Marriott Corp.*,
   124 F.R.D. 619 (N.D. Ill. 1989).....................................................................................9

*Merenda v. VHS of Mich., Inc.*,
   296 F.R.D. 528 (E.D. Mich. 2013) *op.* ...........................................................................9

*Nat'l Fed'n of Blind v. Target Corp.*,
   582 F.Supp.2d 1185 (N.D. Cal. 2007) ..........................................................................15

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .........................................................................................11

*Pecover v. Elec. Arts Inc.*,
   No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010)..............................6

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) .......................................................................................15

*Powell v. Nat'l Football League*,
   No. 4-87-917 (D. Minn. June 20, 1988) ..........................................................................8

*Robertson v. Nat'l Basketball Ass'n*,
   389 F. Supp. 867 (S.D.N.Y. 1975)...............................................................................7, 8

- iii -

*Sharif by Salahudding v. N.Y. State Education Department,*
    127 F.R.D. 84 (S.D.N.Y. 1989) ..................................................................10

*Simmons v. City of Kansas City, Kan.,*
    129 F.R.D. 178 (D. Kan. 1989)....................................................................9

*Soc. Servs. Union, Local 535 v. County of Santa Clara,*
    609 F.2d 944 (9th Cir. 1979) .......................................................................7

*Ward v. Dixie Nat'l Life Ins. Co.,*
    595 F.3d 164 (4th Cir. 2010) .......................................................................6

*White v. Nat'l Collegiate Athletic Ass'n,*
    No. CV 06-0999-RGK, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006) ........13

*White v. Nat'l Football League,*
    No. 4-92-CIV-906 (D. Minn. Nov. 3, 1992).............................................7, 8

*White v. National Football League,*
    822 F. Supp. 1389 (D. Minn. 1993) *aff'd*, 41 F.3d 402 (8th Cir. 1994) ........7

*Wilder v. Bernstein,*
    499 F. Supp. 980 (S.D.N.Y. 1980)..............................................................10

*Yarger v. ING Bank,*
    285 F.R.D. 308 (D. Del. 2012) ...................................................................10

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................1, 7, 11, 15

# PRELIMINARY STATEMENT

Defendants oppose injunctive class certification on one entirely speculative ground: the unsupported claim that some class members supposedly benefit from Defendants' anticompetitive behavior, so stopping that illegal conduct would purportedly create conflicts with all other class members who suffer from the restraints. That argument has no factual basis in this record, and, in any event, is not the law. Indeed, if such a claim were a basis for rejecting injunctive class certification, it would nullify virtually all injunctive class actions involving labor markets (including this Court's certification of the *O'Bannon* injunctive relief class). This would be true not just in antitrust class actions seeking to enjoin anticompetitive behavior in labor markets, but in numerous other class actions involving employee services, race or gender discrimination, or other conduct violating the law.

For this reason, case after case has rejected this argument for opposing an injunctive relief class. As one court facing this same argument recently held: "If the fact that illegal restraints operate to the economic advantage of certain class members were enough to defeat certification, the efficacy of class-wide antitrust suits—and the deterrence function they serve—would wither . . . [D]efendants' argument subverts the purpose of Rule 23(b)(2). When the remedy sought is injunctive rather than monetary, divergent interests within the class militate in *favor* of certification—because certification gives affected parties a greater voice in the litigation."[1] This is just one of multiple defects in Defendants' opposition.

*First,* this Court rejected Defendants' same "substitution effects" argument when it certified the injunctive-relief class in *O'Bannon*. There is no basis for a different outcome here.

*Second*, Defendants' "but for" world in which intra-class conflicts would supposedly exist misrepresents the injunctive relief Plaintiffs actually seek and instead presumes a world with *no* rules at all regarding college player compensation. This is a meritless straw man since the complaints only challenge specific restraints imposed by Defendants, and are clear that less restrictive alternatives are available to Defendants if only they would comply with the law. For example, Plaintiffs do not

---

[1] *Laumann v. Nat'l Hockey League*, Nos. 12-CV-1817 (SAS), 12-CV-3704 (SAS), 2015 WL 2330107, at *10 (S.D.N.Y. May 14, 2015) (emphasis in original).

challenge existing NCAA rules requiring minimum spending for GIAs and do not challenge Defendants' ability to enact a rule that would require schools not to decrease the current level of spending on GIAs to any athlete in the sports at issue. Other less restrictive alternative rules might also emerge once the unlawful restraints of Defendants are struck down. Defendants and their expert thus premise their entire opposition on a remedy that Plaintiffs do not seek. The Ninth Circuit and many other courts have held that asserted conflicts based on such speculation cannot defeat injunctive class certification.

*Third*, even if one were to pretend that Plaintiffs seek to enjoin all possible compensation rules in the sports at issue, and that every one of Defendants' speculations would come to pass, there would still be no lawful basis to deny certification of the injunctive relief classes here. To the contrary, numerous cases have held that the argument presented by Defendants—that increased, lawful competition would be bad for some of the class members subject to illegal restraints—is not a basis for declining to certify an injunctive relief class. Indeed, Plaintiffs are not aware of a single case in which injunctive relief class certification for players, or any other category of workers, has been denied on this basis. This Court should decline Defendants' invitation to become the first court to deny injunctive relief class certification to victims of a collusive labor market because of such substitution effect allegations. The law is clear that a claim that some class members benefit from unlawful behavior is not a lawful ground for denying injunctive class certification.

*Finally*, Defendants' economic evidence, presented by Professor Ordover, is irrelevant in light of the fatal legal flaws in Defendants' opposition. But even if the Court were to consider Professor Ordover's opinions, it would find that Ordover has conceded that he wrongfully assumes an injunction against any possible compensation rules (an injunction that Plaintiffs do not seek), that his "but-for" world is purely speculative, and his claimed substitution effects could theoretically preclude class certification in virtually every injunctive relief case involving labor markets. While legally unnecessary, the *Jenkins* and Consolidated Plaintiffs each have submitted their own expert evidence demonstrating the many flaws in Professor Ordover's analysis. As Plaintiffs' experts explain, there is *no reliable* economic support for any claim by Professor Ordover that many class

members would be harmed by the requested injunctions,[2] and the Ordover opinions should be given no weight.[3]

**ARGUMENT**

## I. *O'BANNON* COMPELS CLASS CERTIFICATION.

Defendants oppose class certification based on a speculative claim that in a world where their unlawful compensation restraints are enjoined, competition will lead to colleges and athletes making different choices, and some "star" class members will fare better at the expense of other less talented class members, who will purportedly fare worse than under the system of unlawful restraints.[4] To make this assertion, Defendants assume a "zero-sum game" in which, for certain class members to reap increased economic benefits, schools will be forced to eliminate or reduce athletic scholarships for other class members. The Court rejected this same argument as a ground for opposing the injunctive class in *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW ("*O'Bannon*"), 2013 WL 5979327 (N.D.Cal. Nov. 8, 2013) ("*O'Bannon Class Cert Order.*"). And did so for good reason: this argument has no legal or factual merit.

There, the NCAA argued that the injunctive class's objective of eliminating NCAA rules prohibiting NIL compensation would lead to a competitive bonanza that would benefit certain class members but harm others. NCAA's Opp'n at 10-11, ECF No. 677, *O'Bannon* (filed Mar. 14, 2013).

---

[2] Concurrently with this Memorandum, the *Jenkins* Plaintiffs have submitted the Expert Report of Professor Edward P. Lazear ("Lazear Rep.") and Declaration of Professor Roger G. Noll ("Noll Decl."), attached as Exhibits 1 and 2, respectively, to the Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Joint Reply for Class Certification, and the CAC Plaintiffs have submitted the Expert Report of Professor Daniel Rascher ("Rascher Rep."), attached as Exhibit 1 to the Declaration of Steve W. Berman in Support of Plaintiffs' Joint Reply for Class Certification.

[3] Plaintiffs also address below Defendants' claim that certain plaintiffs lack standing and, as a consequence, cannot adequately represent the CAC and *Jenkins* classes, respectively.

[4] Defendants' Opposition also makes the false statement that "Plaintiffs in this case have offered no evidence in support of their motion." Opp'n at 5 (emphasis removed). As stated in the Amended Joint Motion for Class Certification (Mot. at 4 n.2), Plaintiffs rely on public documents and statements, and the declarations and exhibits attached to the original Joint Motion for Class Certification. ECF No. 163 (4:14-md-02541); ECF No. 105 (4:14-cv-02758). Plaintiffs also rely on the substantive allegations in the Consolidated Amended Complaint ("CAC"), ECF No. 60, and *Jenkins* Second Amended Complaint (JAC2), ECF No. 194, which must be taken as true on a motion for class certification. *See* Mot. at 4 n.2, 15 (citing *O'Bannon Class Cert. Order* at *2). Further, Defendants do not dispute that the classes satisfy the numerosity, commonality, and typicality requirements and instead focus their entire Opposition on their substitution effects argument challenging adequacy, an argument which this Court has previously rejected. And in rebuttal to Professor Ordover's opinions, Plaintiffs have supplemented their support for class certification with the expert opinions of Lazear, Noll, and Rascher.

- 3 -

As here, the NCAA asserted in *O'Bannon* that such "[s]ubstitution effects would create intolerable conflicts" and claimed that "removing NCAA amateurism rules" would leave some class members worse off in a competitive NIL market. *Id.* The Court expressly rejected these arguments as a basis for denying an injunctive class in *O'Bannon*, holding that the "interests of the broader Injunctive Relief Class would not be affected by" purported intra-class conflicts that the NCAA had asserted as obstacles to certifying a damages class. *O'Bannon Class Cert. Order*, at \*7.

This conclusion applies with equal force here. While Defendants cite the fact that the *O'Bannon* plaintiffs proposed sharing NIL income on a "group" basis, that is a distinction without a difference. In both cases, Defendants claimed the injunctions would unleash competition that would increase spending on college athletes, purportedly resulting in "substitution effects." Although in *O'Bannon* the plaintiffs sought to have NIL revenue shared equally, that sharing would not have changed Defendants' speculative claim that the increased NIL competition between colleges would force some schools to shutter their football or basketball programs altogether, and other schools to eliminate or diminish athletic scholarships. Yet the Court rejected the NCAA's speculative opposition to injunctive class certification and should do so again here.[5]

## II. DEFENDANTS' PROFFERED CLASS CONFLICTS ARE PREMISED UPON INJUNCTIVE RELIEF THAT PLAINTIFFS DO NOT SEEK, AND HYPOTHETICAL CONFLICTS THAT CANNOT DEFEAT CLASS CERTIFICATION.

Defendants' imaginary but-for world is one with no rules regarding college player compensation in the sports at issue—no minimums, no less restrictive conference rules, no rules at all. But that is not the injunctive relief sought by Plaintiffs, who are only challenging specific NCAA restraints, and who do not seek an injunction which would prohibit less restrictive rules such as minimum GIA requirements or a rule which any individual Conference could adopt requiring that

---

[5] The denial of a *damages* class certification in *In re NCAA I-A Walk-On Football Players Litig.*, No. C04-1254C, 2006 WL 1207915 (W.D. Wash. May 3, 2006) ("*Walk-On*") is also of no moment. There, a putative class of college athletes sought damages due to the NCAA cap on the number of GIAs each team could offer. *Id.* at \*1. The court denied certification, finding that named plaintiffs could not adequately represent absent members because each plaintiff would need to demonstrate that he actually would have received a scholarship. *Id.* at \*8-9. In the case of injunctive classes, however, there are no (b)(3) predominance issues or damages to calculate and allocate. Indeed, in *O'Bannon*, the Court rejected Defendants' reliance on *Walk-On with respect to the injunctive class*. *O'Bannon Class Cert. Order* at \*7.

schools not reduce or eliminate existing GIAs.[6] This flaw in Defendant's opposition is fatal, as courts in this district routinely certify classes where defendants' arguments in opposition do not address the actual relief being sought. *See, e.g.*, *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 184–85 (N.D. Cal. 2015); *Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 4279674, at *5 (N.D. Cal. Sept. 11, 2008); *cf. Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013) (reversing class certification because economic evidence did not fit plaintiffs' actual liability theory).

Here, Defendants claim that Plaintiffs' "requested injunction []would lead to the reduction or elimination of scholarships and athletic opportunities for many of the thousands of less renowned student-athletes . . . ." Opp'n. at 1 (emphasis removed). But Plaintiffs have not challenged Defendants' existing rules setting a *floor* for athletic scholarships.[7] These unchallenged rules *require* minimum funding levels for Division I membership and heightened scholarship minimums for FBS football.[8] Nor would Plaintiffs challenge any new rule by Defendants that required their member schools to provide compensation to all FBS football players and Division I men's and women's basketball players at funding levels at least equal to that which is currently being provided to class members. Defendants' argument that the injunctive relief sought would cause many class members to receive less than their current GIA because there could be "no rules" at all is thus based on a misrepresentation of the injunctive relief that is being sought.

Because Plaintiffs do not seek the injunctive relief hypothesized by Defendants, their imagined "but-for" world is based on unreliable conjecture. Among other things, at least the following hypothetical events would have to occur for the speculative scenarios advanced by

---

[6] *See, e.g.*, Opp'n at 8 (if injunction granted, "many putative class members would receive less financial aid than they currently receive, and perhaps no aid at all"); 9 (". . . only superstar student-athletes would likely earn substantial compensation, while many putative class members would receive little or no financial aid."); 12 (a "'free and open' marketplace . . . would drive the payments to superstar student-athletes up and the payments to less talented student-athletes down to a 'minimum' level . . . which [] would be zero . . . .")

[7] *See, e.g.*, JAC2 at ¶¶ 38, 39.

[8] Under Bylaw 20.9.9.4, all schools in Division I Football Bowl Subdivision, other than the national service academies, must: "(a) Provide an average of at least 90 percent of the permissible maximum number of overall football grants-in-aid per year during a rolling two-year period; and (b) Annually offer a minimum of 200 athletics grants-in-aids or expend at least $4 million on grants-in-aid to student-athletes in athletics programs."

JOINT REPLY IN SUPPORT OF CLASS CERTIFICATION - CASE NOS. 4:14-MD-02541-CW; 4:14-CV-02758-CW

Defendants to even come into the realm of possibility: (1) the NCAA and its members would have to vote to eliminate all current minimum GIA requirements; (2) colleges and conferences would have to decide not to enact any new less restrictive rules regarding player compensation (such as rules that existing GIAs could not be reduced); (3) individual schools would have to abandon their long-proffered rationales and embark on spending sprees for star players without any economic discipline; *and* (4) the schools paying increased money for some class members would have to decide to reduce or eliminate the GIAs for other class members rather than continue to pay them at least their current GIA amounts either by reallocating expenditures currently being made to coaches, facilities, athletic directors, recruiting or other outlays, or by drawing upon some of the new massive revenue increases which these schools are already experiencing.

Even if the Court were to assume that all of the above counter-factual assumptions would occur, if any class members were worse off, it would be due to the choices of *Defendants* and their member institutions—not the injunction that Plaintiffs seek. Plaintiffs only seek to enjoin Defendants from conspiring *not to pay* athletes anything, apart from the existing GIA, in the sports at issue. What individual schools and conferences do when freed from these unlawful restraints would be up to them.

Defendants fail to acknowledge the possibility of a single, less restrictive alternative rule to the status quo—and simply assume an outcome where no rules at all exist. ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Section IV, *infra*. As a matter of law, such expert speculation cannot defeat an injunctive class. *See., e.g., Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (rejecting denial of class certification on the basis of speculative conflicts); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (rejecting "uncertain prediction" argument that named class representative in insurance litigation could not adequately protect class interests); *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *10 (N.D. Cal. Dec. 21, 2010) (holding that defendant's "hypothetical scenarios indicating that intra-class conflicts might exist" could not defeat class certification).

Indeed, as Your Honor has held "the mere potential for a conflict of interest is not sufficient to defeat class certification; *the conflict must be actual, not hypothetical.*" *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985 CW, 2008 WL 4065839, at *5 (N.D. Cal. Aug. 27, 2008) (Wilken, J.) (emphasis added) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) ("[m]ere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification.")). As long ago as 1975, in the landmark *Robertson* NBA player antitrust class action, the substitution-effects argument against class certification was rejected as "imaginative speculation." *Robertson v. Nat'l Basketball Ass'n*, 389 F. Supp. 867, 899 (S.D.N.Y. 1975). The same outcome is required today.

## III. DEFENDANTS' ARGUMENTS REGARDING CLASS CONFLICTS BASED ON PURPORTED "SUBSTITUTION EFFECTS" HAVE NEVER BEEN RECOGNIZED AS A BASIS FOR DENYING INJUNCTIVE CLASS CERTIFICATION.

Defendants' Opposition also fails because even were it not based on rank speculation, it would still not provide a lawful basis for opposing injunctive class certification. Plaintiffs know of no court—and defendants identify none—that has ever denied injunctive class certification under Rule 23 (b) (2) on the ground that enjoining unlawful behavior might not be in the interest of some class members. To the contrary, the law is clear that such an argument has no merit.

For example, in *White v. National Football League*—the antitrust class action that introduced free agency for NFL players—objectors to a class settlement argued that some class members would benefit from free agency at the expense of others, who would purportedly receive less compensation due to increased competition. 822 F. Supp. 1389, 1405-06 (D. Minn. 1993) *aff'd*, 41 F.3d 402 (8th Cir. 1994). Defendants also argued that, because there are a finite number of starting positions on any given team, for every starting position gained by one class member due to free agency, a starting position would be lost by another class member. Defendants' Opposition to Plaintiffs' Motion for Injunctive Class Certification at 10, *White v. Nat'l Football League*, No. 4-92-CIV-906 (D. Minn. Nov. 3, 1992).[9] The court rejected every one of these arguments in certifying an injunctive-relief class:

> No matter what stage a player is in his career, defendants have imposed various rules 'in

---

[9] Attached as Exhibit 4 to the Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Joint Reply for Class Certification.

substantially identical manner to all players within the NFL.' . . . [N]o matter what level of seniority, all class members share a common interest in the form and substance of the NFL's player rules, and all class members share a similar interest in the future of the NFL. *Cf. Robertson*, 389 F. Supp. at 899 (even former players were concerned about the National Basketball Association's future). Although the free agency rules set forth in the proposed settlement vary depending on players' seniority, that distinction does not create adverse interests within the class because those rules relate solely to the remedy, not to the subject matter, of the present litigation. *White*, 822 F. Supp. at 1405-06.

For these reasons, numerous injunctive classes of athletes have been certified in antitrust actions like this one without regard to the possibility that competition might not benefit all class members equally. *See, e.g.*, *Brown v. Pro Football, Inc.*, 518 U.S. 231 (1996) (athlete class seeking injunctive relief prohibiting fixed salaries certified with no discussion of any possible substitution effects); Findings and Order and Stipulation, *Powell v. Nat'l Football League*, No. 4-87-917 (D. Minn. June 20, 1988) (athlete class seeking injunctive relief prohibiting certain restraints on player mobility and compensation certified with no discussion of possible substitution effects)[10]; *Robertson*, 389 F. Supp. at 903 (certifying an injunctive class of NBA players despite claimed substitution effects). Defendants ask the Court to become the only Court to ever deny injunctive class certification based on purported substitution effects in a decision that would "have wide ranging effects on the ability to resolve antitrust claims as class actions." *Kamakahi*, 305 F.R.D. at 192. This observation was only recently made by Judge Spero in rejecting similar substitution effects arguments against a class of women who donated eggs at fertility clinics and were challenging a maximum compensation restraint:

> [I]n a but-for world one would expect that the increased compensation [created by removing the compensation cap] would have attracted other donors with characteristics that would have been preferable to recipients, and thus some women in the current class would not have been selected at all. In effect, [Defendants' contention] would bar not only most (if not all) monopsony price-ceiling claims, but also many claims of traditional price fixing by sellers . . . .

*Id.* at 192-93; *see also Laumann*, 2015 WL 2330107, at *10 ("If the fact that illegal restraints operate to the economic advantage of certain class members were enough to defeat certification, the efficacy of class-wide antitrust suits . . . would wither.").

---

[10] Attached as Exhibit 5 to the Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Joint Motion for Class Certification.

If the Court were to adopt Defendants' position, numerous classes of workers that have been certified in the past could not be certified in the future because there would always be a possible "substitution effect." *See, e.g., Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013) (certifying a class of registered nurses challenging hospitals' wage fixing practices with no discussion of possible substitution effects) *op. reinstated on reconsideration sub nom. Cason-Merenda v. VHS of Mich., Inc.*, No. 06-15601, 2014 WL 905828 (E.D. Mich. Mar. 7, 2014); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013) (certifying class of high-tech employees challenging an anti-poaching agreement with no discussion of possible substitution effects). Indeed, even in a class action to remedy wage discrimination against female or minority employees, under Defendants' substitution effects theory, no injunctive class could ever be certified because an injunction might cause substitution effects.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████    ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████    But the courts have made it clear that such substitution effects arguments are not a basis for denying injunctive class certification, and characterized it as an "absurd proposition [that] would of course doom almost every *class* action charging discrimination in promotion—a drastic rewrite of the law in this area. . ." *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 625 (N.D. Ill. 1989) (rejecting argument that "because class members compete against *each other* for the same promotions, none can adequately represent the class . . . In the universe Marriott would create, discrimination law would be simpler because class-discriminatory promotion would be cost-free.") (internal citations omitted) (emphases in original). *See also Simmons v. City of Kansas City, Kan.*, 129 F.R.D. 178 (D. Kan. 1989) (rejecting argument that class members challenging a discriminatory promotion policy had antagonistic interests to each other because "[a]t most, defendants have highlighted the inevitable factual variations among named plaintiffs and potential class members. Such variations are

---

[11] Attached as Exhibit No. 3 to Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Joint Reply for Class Certification.

insufficient to undermine the adequacy of the named plaintiffs' representation."); *Kuenz v. Goodyear Tire & Rubber Co.*, 104 F.R.D. 474, 477 (E.D. Mo. 1985) (same).

In sum, protecting some hypothetical potential class members who may benefit from a defendant's illegal conduct "*is not an interest the law is willing to protect.*" *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995) (emphasis added) (certifying an antitrust class over the claim from certain objectors that the alleged price-fixing conspiracy benefitted their long-term interests).[12] This principle was applied in the context of competition for college scholarships in *Sharif by Salahudding v. N.Y. State Education Department*, where a district court certified a class of female high school seniors challenging as discriminatory the state's policy of awarding scholarships based solely on standardized testing. The court rejected the argument that, because of a limited number of scholarships, "any change in the scholarship criteria would benefit some females at the expense of others who would win a scholarship but for the change." 127 F.R.D. 84, 88 (S.D.N.Y. 1989). Instead, the court found that "[e]limination of discriminatory selection criteria will benefit all members of the proposed class . . . A prospective class member who may have won a scholarship under the SAT-only system, would not be 'injured' under law if she does not win a scholarship under revised, non-gender-biased criteria . . . Courts simply do not recognize such an injury; the 'conflict' as described by defendants is not a true conflict." *Id.* at 89.

Defendants' claim that some class members benefit from the unlawful restraints is not a legal basis to oppose an injunctive class. Any contrary rule would overturn decades of law and eviscerate the injunctive class action device for players and other workers harmed by illegal behavior.[13]

---

[12] Numerous courts have held that the fact that some putative class members might oppose a particular injunction does not create a conflict to defeat class certification. *See, e.g., Cooper v. IBM Pers. Pension Plan*, No. 99-829-GPM, 2001 WL 36412295, at *5 (S.D. Ill. Sept. 17, 2001) *order corrected*, No. 99-CV-829, 2001 WL 1772736 (S.D. Ill. Oct. 3, 2001) ("While [it] may theoretically be true in every large class action [that some class members prefer the status quo to the future changes if the litigation succeeds], it does not prevent class certification"); *Lanner v. Wimmer,* 662 F.2d 1349, 1357 (10th Cir. 1981) (holding that a class can be certified even "if some members of the class might prefer to not to have violations of their rights remedied"); *Wilder v. Bernstein*, 499 F. Supp. 980, 993 (S.D.N.Y. 1980) (same); *Yarger v. ING Bank*, 285 F.R.D. 308, 317-18 (D. Del. 2012) (citing *In re K–Dur Antitrust Litig.,* 686 F.3d 197, 223 (3d Cir. 2012)) (plaintiffs are not required to "show that no class member benefitted from the challenged conduct. . . . [T]he mere fact that a potential class member may not have suffered injury as a result of defendant's conduct is not a reason to deny class certification").

[13] Defendants' cited cases concerning a lack of class cohesion are inapposite. In those cases, courts found that each class member sought different relief, such as individual medical monitoring. But, the

# IV. DEFENDANTS' ECONOMIC ASSUMPTIONS ARE PURE FICTION.

There is no need to consider Professor Ordover's Report, which Defendants submit as purported support for their legally defective opposition arguments. ████████████
████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

While Professor Ordover's admissions are more than enough to conclude that his speculative opinions about possible harm to some class members from the injunctive relief requested are not

---

requirements of Rule 23(b)(2) are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan,* 754 F.3d 657, 688 (9th Cir. 2014).

reliable, Plaintiffs have also submitted their own economic evidence in response to Dr. Ordover, which further demonstrate that Ordover's opinion are economically and factually unsound.

As Professors Lazear, Noll and Rascher explain, in addition to Ordover's false assumptions about the relief being sought in this case, and rampant speculation about a but-for world filled with unknowns: (i) Ordover's substitution analysis is contrary to standard economics, looks backwards instead of forward in time, fails to consider that any supplanted players are likely to be future high school players who are not class members, improperly assumes zero revenue growth since 2013 even though revenues have already exploded since then and are expected to continue to grow in the future, and ignores various NCAA rules that undermine his analysis; (ii) Ordover improperly compares college and pro compensation distributions as if they would be similar, when there is no reason to believe that is the case, (iii) Ordover's uncritical reliance on NCAA financial data is misconceived, and does not accurately reflect actual college decision-making given, *inter alia*, their non-profit status in which all revenues are spent, just not competitively on players, (iv) Ordover's "superstars" analysis is flawed and based on incorrect assumptions and methods; (v) Ordover's use of athlete marginal revenue product is economically deficient; and (vi) Ordover ignores the fact that, under current NCAA rules, colleges have provided full GIAs to all athletes on the roster who receive a scholarship and count towards the scholarship limits (85 in FBS football, 15 in DI women's basketball, and 13 in DI men's basketball) (known as "counters") even when not required to do so, which undermines any assertion that the competitive value of these players is less than a full GIA. *See* Lazear Rep., Noll Decl., and Rascher Rep. Ordover also misconstrues Professor Noll's prior testimony and reports, which do not support any of Defendants' arguments here. Noll Decl. 4-6.

Defendants claim that Plaintiffs were required to submit these expert reports as part of their initial moving papers. This is not correct. As made clear by the very Supreme Court precedent Defendants cite, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This motion is straightforward, and, based on the pleadings, does not require any expert testimony to find that the injunctive classes should be certified. It is Defendants who have chosen to inject legally irrelevant, and speculative, economic

issues and evidence in opposition. Plaintiffs have submitted their narrowly-tailored expert rebuttals to respond to Defendants' submission, but this Court can certify the requested injunctive classes without relying upon any of the expert testimony.

## V. NAMED PLAINTIFFS EACH HAVE STANDING TO PURSUE AN INJUNCTION ON A CLASS-WIDE BASIS.

Defendants argue that "the CAC plaintiffs no longer have a proposed representative for their putative FBS football class." Opp'n. at 19. This claim fails for several reasons. For one, it ignores the fact that, as explained in the Amended Joint Motion,[14] the college athletes—irrespective of what sport they play—are seeking to remove the exact same unlawful restraint causing college basketball and college football players the same harm. Thus, the claims of John Bohannon and Justine Hartman are plainly "typical" of the absent class member college athletes, including football players. *O'Bannon Class Cert. Order*, at *4 ("This requirement is usually satisfied if the named plaintiffs have suffered the same or similar injuries as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members were injured by the same course of conduct.").

Further, this Court should not doubt the "adequacy" of John Bohannon and Justine Hartman to represent the classes, given that both athletes have already confirmed that they are ready, willing, and able to "prosecute the action vigorously on behalf of the class[es]." *White v. Nat'l Collegiate Athletic Ass'n*, No. CV 06-0999-RGK, 2006 WL 8066803, at *3 (C.D. Cal. Oct. 19, 2006) (internal quotation marks and citation omitted). In particular, both plaintiffs have testified that they, in connection with their roles as class representatives, are committed to representing not just fellow basketball players, *but also football players*.[15]

Finally, Defendants cobble together a few paragraphs at the end of the brief in a misguided

---

[14] *See* Mot. at 12, n.36 ("Consolidated Plaintiffs and the members of the Consolidated Class are subject to identical unlawful practices, *regardless* of which school they attended or *which of the two sports they played*.") (emphasis added); 13 ("These class representatives and the members of the proposed classes are/were subject to identical unlawful practices, *regardless* of which school they attended or *which of the two sports they played*.") (emphasis added).

[15] *See, e.g.* Bohannon Dep. Tr. at 18:2-20, 194:24-195:9 and Hartman Dep. Tr. at 296:20-297:7, attached as Exhibits 2 and 3, respectively, to the Declaration of Steve W. Berman in Support of Plaintiffs' Joint Reply for Class Certification.

effort to suggest that John Bohannon and Justine Hartman lack standing. In so doing, Defendants ignore the fact that courts evaluate standing based "on the facts *as they exist when the complaint is filed.*" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (emphasis in original) (internal quotation marks and citation omitted). At the time the original complaint in the MDL was filed (March 5, 2014), John Bohannon was still in his senior year at the University of Texas at El Paso[16], while Justine Hartman was in the midst of her junior year at the University of California, Berkeley (*see* N.D. Cal. Case No. 4:15-cv-00178 JCS, ECF No. 1 at ¶¶ 22-23[17]). Accordingly, these class representatives have standing to pursue injunctive relief.[18]

Defendants seem to be arguing that the CAC Plaintiffs' injunctive relief claims have been "mooted," now that the students have finished their college play. This argument—that the clock has run out on the CAC Plaintiffs' injunctive relief case simply because this complex multidistrict litigation has taken significant time to get to this stage—is not only callous, but devoid of merit. Defendants disregard the well-settled "inherently transitory" rule pertaining to mootness, a doctrine that applies to the facts of this case. "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1531 (2013). Under the doctrine, "where a claim is 'so inherently transitory that the trial court will not have . . . enough time to rule on a motion for class certification before the proposed representative's individual interest expires . . . the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution.'" *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (alterations in original) (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)). As the Ninth Circuit recently explained:

> An inherently transitory claim will certainly repeat as to the class, either because "[t]he individual could nonetheless suffer repeated [harm]" *or because "it is certain that other persons similarly situated" will have the same complaint*. In such cases, the named plaintiff's claim is 'capable of repetition, yet evading review,' . . . .

---

[16] On the date John Bohannon filed his action (April 25, 2014), before the cases were consolidated, he was still receiving his collusively-capped grant-in-aid. *See* D. Minn. Case No. 0:14-cv-01290-ADM-JSM at ECF No. 1 at ¶ 19.

[17] These allegations have been incorporated into the CAC. *See* ECF No. 197.

[18] So too does Martin Jenkins, as he was still in his junior year at Clemson University when the *Jenkins* action was filed on March 17, 2014. *See* JAC2 at ¶ 109.

- 14 -

Application of the relation back doctrine in this context thus avoids the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved.

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (emphasis added) (internal citations omitted).

The Consolidated Plaintiffs' case is a prime candidate for application of the "inherently transitory" rule regarding mootness.[19] Without the doctrine, current college athletes would face bleak odds of ever successfully challenging Defendants' unlawful restraints. Rather, time would run out for these athletes, as their NCAA eligibility would expire before they could take all steps necessary to proceed through the complex antitrust litigation thicket, and prevail at class certification against powerful institutions like Defendants. Such an unjust result would contravene Supreme Court and Ninth Circuit authority. The rare fact that certain underclassmen and underclasswomen stepped forward as plaintiffs here is a testament to their personal fortitude and unique abilities to handle the pressures of athletic competition, academics, and leading a major antitrust class action. The law cannot and should not require continuous waves of teenagers, newly enmeshed in the NCAA system, to challenge the system when they are most vulnerable or forever lose that right to seek change. All of the class representatives have standing and their claims are not mooted.[20]

## CONCLUSION

Plaintiffs request the Court to certify each of the proposed injunctive classes of college football and men's and women's basketball athletes under Rules 23(a) and (b)(2).

---

[19] Defendants' proffered authorities miss the mark, as those cases did not involve scenarios that would prompt invocation of the "inherently transitory" principle. In *Ellis v. Costco Wholesale Corp.*, there was nothing transitory about the Costco managers' claims, given that the managers *voluntarily* left their employment before the case proceeded to class certification. 657 F.3d 970, 976, 986 (9th Cir. 2011). Similarly, in *Funeral Consumers Alliance, Inc. v. Service Corp. International*, the fact pattern at issue—consumers who lacked injunctive relief standing because they faced no real and immediate threat of paying for artificially-overpriced caskets—left no reason for application of the principle. 695 F.3d 330, 342-343 (5th Cir. 2012). Moreover, the cases Defendants cite in footnote 12 pertain to class members' standing to recover *monetary relief*—a topic not at issue in this motion to certify an injunctive class under FRCP 23(b)(2). *See* Opp'n at 20 n.12.

[20] Of course, if the Court has misgivings for any reason about any representative's ability to represent the classes, it can conditionally certify the classes, and order Plaintiffs to substitute a new class representative(s). *See Nat'l Fed'n of Blind v. Target Corp.*, 582 F.Supp.2d 1185, 1201 (N.D. Cal. 2007) (citing *Kremens v. Bartley*, 431 U.S. 119, 135 (1977);*Gibson v. Local 40*, 543 F.2d 1259, 1263 (9th Cir. 1976)).

Dated:  June 26, 2015                    Respectfully submitted,

By ___/s/ Steve W. Berman_____
Steve W. Berman (*pro hac vice*)
Ashley Bede (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
*steve@hbsslaw.com*
*ashleyb@hbsslaw.com*

Bruce L. Simon (96241)
Aaron M. Sheanin (214472)
Benjamin E. Shiftan (265767)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008
*bsimon@pswlaw.com*
*asheanin@pswlaw.com*
*bshiftan@pswlaw.com*

Jeff D. Friedman (173886)
Jon T. King (205073)
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
*jonk@hbsslaw.com*
*jefff@hbsslaw.com*

Counsel for *Consolidated Plaintiffs*
*Interim Co-Lead Class Counsel*

By /s/ Elizabeth C. Pritzker___
Elizabeth C. Pritzker (146267)
Jonathan K. Levine (220289)
Bethany L. Caracuzzo (190687)
Shiho Yamamoto (264741)
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone:  (415) 692-0772
Facsimile:   (415) 366-6110

*Additional Class Counsel*

By ___/s/ Jeffrey L. Kessler_____
Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Timothy M. Nevius (*pro hac vice*)
Joseph A. Litman (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
*jkessler@winston.com*
*dfeher@winston.com*
*dgreenspan@winston.com*
*tnevius@winston.com*
*jlitman@winston.com*

Derek J. Sarafa (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
*dsarafa@winston.com*

Sean D. Meenan (SBN 260466)
Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
*smeenan@winston.com*
*jparsigian@winston.com*

Counsel for *Jenkins* Plaintiffs
*Interim Class Counsel*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatory above.

/s/ Jeffrey L. Kessler
JEFFREY L. KESSLER